**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

HAYLEY AUDRIENA DANNER,

Plaintiff,

v. Case No. 1:26-cv-00385-KWR-JMR

DOMINO'S PIZZA, INC., et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss.[1] Defs.' Mot. Dismiss, Doc. 13. Defendants argues that their motion should be granted because

[1] Defendants Domino's Pizza, Inc., Pecos Valley Pizza, Inc. (BAM Franchise), Matthew Johnson, Charmaine Thomas, Josh Celestine, Brian Bailey, and Ray Santiago join in this collective Motion to Dismiss. Mot. at 1. These parties, collectively "Defendants," served as the original named parties in Plaintiff's initial complaint. *See* Pro Se Compl. at 1, Doc. 1. Plaintiff's First Amended Complaint features a litany of new defendants not incorporated in her initial complaint. *See* First Am. Compl. at 1–2, Doc. 9. The Court previously permitted Plaintiff to proceed *in forma pauperis*, and the Court completed service of process on the original named Defendants, for whom Plaintiff provided respective service addresses. *See* Order Granting Appl. Proceed *In Forma Pauperis* and Order for Addresses for Service at 1–4, Doc. 7; *see also* Second Order Requesting Waiver Service at 1–2, Doc. 12.

However, Plaintiff failed to provide service addresses to the Court for the additional defendants named in the First Amended Complaint, prompting the Court to once again order Plaintiff to provide the information. Order for Addresses for Service at 1, Doc. 20. The Court imposed a deadline of September 25, 2026, for Plaintiff to furnish the requested information. *Id.* On September 17, 2026, Plaintiff filed a Response Providing Updated Addresses for Services and a Motion for Court-Ordered Service, Extension of Time, and Relief from Dismissal. *See generally* Docs. 21, 22.

On October 20, 2026, the Court ruled on Plaintiff's Motion for Court-Ordered Service, Extension of Time, and Relief from Dismissal, (1) denying without prejudice Plaintiff's request to direct the United States Marshal to serve the newly added defendants, (2) declining to "excuse Plaintiff from her duty to provide service addresses for the [new] [d]efendants," (3) granting Plaintiff additional time to serve the new defendants, and (4) declining to dismiss "for failure to serve or comply with

"[m]any of the alleged claims are not recognized under applicable law, and the Complaint falls . . . short of alleging sufficient facts that would establish a probable right to relief under any of Plaintiff's other theories of recovery." *Id.* at 2–3. Plaintiff advances several arguments, chiefly that her allegations are sufficient at this stage of the proceedings. *See generally* Pl.'s Resp. Opp. Mot. Dismiss, Doc. 15. Alternatively, Plaintiff asks for leave to amend if her Complaint is insufficient as it stands. *Id.* at 19–20.

Having reviewed both parties' briefing and the applicable law, the Court finds that Defendants' Motion is well-taken and, therefore, is **GRANTED**. Because some of the Court's dismissal rests on curable defects, and others rest on legal bars, **the Court grants Defendants' Motion without prejudice in part and with prejudice in part**. Plaintiff is given **21 days to amend.** If Plaintiff fails to timely amend her complaint, the court may dismiss these claims with prejudice.

## BACKGROUND

Plaintiff, proceeding pro se, submitted an initial complaint against Defendants on February 11, 2026. *See generally* Pro Se Complaint, Doc. 1. Later, on February 24, 2026, Plaintiff filed her First Amended Complaint (hereinafter "Complaint"). *See* First Am. Compl. ("Compl.") at 1–2, Doc. 9. Plaintiff's Complaint paints a somewhat disjointed picture of allegations. Nevertheless, the Court attempts to piece together Plaintiff's allegations as clearly as can be gleaned.

Plaintiff opens by listing and briefly describing some of the relevant parties and their corresponding alleged wrongdoing. *Id.* at 1–2. Defendant Domino's Pizza, Inc. ("Domino's") is described as a "corporate entity," and its alleged wrongdoing is "oversight, HR, ratification,

---

the Court's order for service addresses at this time." *See generally* Order Granting in Part and Den. in Part Pl.'s Mot. Ct. Ordered Service, Doc. 23. "Finally, the Court order[ed] the Clerk's Office to email forms requesting waivers of service" for the new defendants. *Id.* at 4.

obstruction of lawful claims" (sic). *Id.* at 1. Defendant Pecos Valley Pizza, Inc. (BAM Franchise) ("Pecos") is described as "direct employer" and its alleged wrongdoing is "day-to-day harassment, wage theft, retaliation" (sic). *Id.* Defendant Matthew Johnson ("Johnson") is described as "VP Human Resources," and his alleged wrongdoing is "Corporate HR oversight, witness obstruction, misrepresentation of law" (sic). *Id.* Defendant Charmaine Thomas ("Thomas") is described as "General Manager," and her alleged wrongdoing is being "responsible for scheduling, tip diversion, retaliation, and harassment" (sic). *Id.* Defendant Josh Celestine ("Celestine") is described as "former General Manager," and his alleged wrongdoing is "supervising misconduct, retaliation, wage violations" (sic). Defendant Brian Bailey ("Bailey") is described as "counsel for BAM," yet confusingly referred to as BAM's CEO later, and his alleged wrongdoing is "participat[ing] in blocking Plaintiff's communication and facilitating harassment" (sic). *Id.* at 1, 3. Defendant Ray Santiago ("Santiago") is described as "supervising manager," and his alleged wrongdoing is "oversight of abusive conduct." *Id.* at 1. Finally, Plaintiff enumerates a litany of additional defendants, who are not germane to the purpose of Defendants' Motion. *See supra* n.1.

Plaintiff's next section, "Factual Allegations," contains a slew of conclusory allegations structured around various, sometimes vague categories of wrongdoing. *Id.* at 2–5. In subsection "Corporate Admissions, Retaliation, and HR Obstruction" (sic), Plaintiff alleges that Defendant Johnson misrepresented wage and tip law. *Id.* at 3. Plaintiff further alleges that Defendant Johnson engaged in "intentional obstruction of a witness, witness intimidation, and ratification of ongoing harassment" by telling a "minor witness Sophiyah Gill" and her mother not to communicate with Plaintiff (sic). *Id.* In the same subsection, Plaintiff states, without specifying further, that "Domino's Corporate admitted Plaintiff was owed for three unpaid deliveries but delayed payment, constituting late payment under federal and New Mexico law." *Id.* Plaintiff alleges that "her

repeated attempts to contact corporate counsel were ignored, while BAM counsel issued cease-and-desist instructions blocking Plaintiff from reporting ongoing abuse." *Id.* Concluding this subsection, Plaintiff states that her "EEOC filing is pending." *Id.*

In her next subsection, entitled "Wrongful Termination/Falsified Evidence," Plaintiff alleges that she "was terminated for alleged 'falsification of evidence' regarding two selectively redacted text messages." *Id.* In the following subsection entitled "Continued Harassment/Compounded Trauma," Plaintiff alleges that gossip and false narratives by "multiple employees exacerbated Plaintiff's trauma." *Id.* at 3–4. Further, she alleges "[p]ublic humiliation included accusations during Secret Santa and refusal to investigate despite surveillance evidence." *Id.* at 4. She concludes the subsection by alleging that "[r]etaliatory scheduling and mandatory meetings were used to intimidate and punish Plaintiff." *Id.*

Plaintiff reasserts a similar, conclusory allegation in a subsequent subsection entitled "HR Gaslighting, Deception, and Psychological Manipulation" (sic). *Id.* Plaintiff states that "[Defendant] Johnson repeatedly misrepresented wage law, minimized misconduct, mocked trauma, forced repeated recounting of trauma, attempted to silence witnesses including minors, engaged in obstruction, gaslighting, and falsified narratives" (sic). *Id.*

In her next subsection, entitled "Wage Theft, Tip Interference, Misrepresented Pay," Plaintiff alleges Defendants Thomas and Celestine diverted tips, reduced hours, and required uncompensated work in violation of "FLSA §§ 203(m), 206, 2151(a)(3) and NMSA § 50-4-1" (sic). *Id.* In the subsection "Hostile Work Environment," she alleges that Defendant Thomas, along with other non-germane individuals, "engaged in harassment, gossip, mocking, exclusion, and isolation, exacerbating trauma." *Id.* Next, in the subsection "Unsafe Exploitative Conditions," Plaintiff alleges that she was "forced to perform hazardous deliveries, multiple, untrained roles,

and exposed to threats via group chats." *Id.* Additionally, Plaintiff includes a subsection, "Intentional Infliction of Emotional Distress," ("IIED") in which she details alleged "past trauma," for which Defendants "had actual knowledge yet [they] allowed harassment to continue, intensifying prior trauma." *Id.* Plaintiff's final two subsections under "Factual Allegations" include an inapplicable section regarding the newly added defendants, and a reiteration of previously stated conclusory allegations along and somewhat inscrutable strings of words.[2]

Finally, the Complaint, in its "Claims for Relief," asserts (1) FLSA violations, (2) Title VII violations, (3) intentional infliction of emotional distress, (4) wrongful termination/retaliation, (5) defamation/public humiliation, (6) state wage violations, (7) negligent supervision/ratification of misconduct, and (8) obstruction of reporting/witness tampering (sic). *Id.* at 5. Altogether, Plaintiff seeks $13,500,000 in damages, along with various forms of injunctive relief. *Id.* at 5.

On August 14, 2026, Defendants filed this collective Motion to Dismiss. Mot. at 1. These parties, collectively "Defendants," served as the original named parties in Plaintiff's initial complaint. *See* Pro Se Compl. at 1, Doc. 1. Plaintiff filed her Response to Defendants' Motion on August 17, 2026, and Defendants' Reply followed on August 27, 2026. *See generally* Pl.'s Resp. Opp'n Mot. Dismiss, Doc. 15; Defs.' Reply Supp. Defs.' Mot. Dismiss, Doc. 18.

**LEGAL STANDARD**

Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, to survive a motion to dismiss for failure to state a claim, a complaint must have sufficient factual matter that, if true, states a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

---

[2] For instance, Plaintiff's section "Accrued and Escalating Harm/Damages Justification" includes statements such as "[c]orporate escalation → additional legal exposure and attorney involvement" (sic) and "[m]isconduct continues → gossip, harassment, false accusations" (sic).

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[I]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir.2008)). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

In ruling on a motion to dismiss under Rule 12(b)(6), "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming*, 656 F.3d at 1214. The Court accepts "all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.,* 442 F.3d 1239, 1244 (10th Cir. 2006) (abrogated in part on other grounds)). However, allegations that are "so general that they encompass a wide swath of conduct," do not state a plausible claim under the pleading standard. *Robbins*, 519 F.3d at 1247. Additionally, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, Federal Rule of Civil Procedure 15(a)(2) states that leave to amend a party's complaint "should freely [be] give[n] when justice so requires." The Court dismisses for failure to state a claim with prejudice when leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1126 (10th Cir. 1997)).

Generally, a party must make a motion for leave to amend a complaint, and a district court need not offer leave to amend *sua sponte*. Local rule 15.1 requires that "a proposed amendment to a pleading must accompany the motion to amend." D.N.M. LR-Civ. 15.1. The Tenth Circuit has held that the federal rules also require a motion to be filed. *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1172 (10th Cir. 2023) (*pro se* plaintiff "never separately filed a motion with a proposed amended complaint adding those claims, as required by Federal Rule of Civil Procedure 15(a)(2) and District of Colorado Rule 15.1(b)."). Rule 7 requires a request for relief to be made by a motion that (1) is in writing, (2) "states with particularity the grounds for seeking the order," and (3) specifies the relief sought. Fed. R. Civ. P. 7(b)(1). "We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).

**DISCUSSION**

The Court begins its discussion by reaffirming the general principle that the Court affords pro se litigants an extra degree of deference over trained professionals, offering a more charitable level of scrutiny. *See Erickson*, 551 U.S. at 94. It is a difficult and laudable endeavor for an individual, without formal legal training, to attempt to navigate our legal system. However, although the Court can excuse inartful pleading and an absence of fastidious adherence to some of

the rules of procedure, such as citing proper legal authority, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), the Court cannot overlook more fundamental defects such as failure to state a claim upon which relief may be granted. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (quoting *Garrett v. Selby, Connor, Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005)). Moreover, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf," and this restriction applies in full force to pro se litigants. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)); *see also Wilson v. Wal-Mart Stores East, L.P.*, No. 23-CV-00531-SH, 2025 WL 1951939, at *2 n.6 (N.D. Okla. July 16, 2025) ("Pro se plaintiffs are given some benefit of the doubt, but the Court must refrain from assuming the role of advocate.") (citing *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1024–25 (10th Cir. 2012)); *see also Hall*, 935 F.2d at 1110).

The Court finds that Plaintiff fails to state a claim upon which relief may be granted. Plaintiff's allegations are factually deficient, legally deficient, and at times both.

## I. **Plaintiff fails to sufficiently state an FLSA claim.**

Plaintiff fails to sufficiently plead a Fair Labor Standards Act ("FLSA") claim. Plaintiff attempts to allege a claim under the FLSA for "unpaid wages, tip diversion, and retaliation." Compl. at 5. The Court agrees with Defendants that Plaintiff "fails to allege facts supporting the imposition of liability under" the FLSA. Mot. at 5.[3] Accordingly, the Court dismisses Plaintiff's FLSA claims without prejudice.

[3] Defendants also argue that the Complaint fails to show that Plaintiff's FLSA claims are timely. Mot. at 7. Defendants submit this argument as to Plaintiff's New Mexico wage, intentional infliction of emotional distress, and defamation claims. Mot. at 7, 10–12. Because the Court

### A. Plaintiff fails to sufficiently allege that many Defendants were employers under the FLSA.

Plaintiff does not plead an actionable claim under the FLSA against Defendants Domino's, Johnson, Bailey, or Santiago. As a threshold matter for any claims under the FLSA, Plaintiff must allege an employer-employee relationship. Indeed, "[a]n employer-employee relationship is a prerequisite to an FLSA claim." *Merrill v. Harris*, No. 1:16-CV-02242-KLM, 2022 WL 3696669, at *5 (10th Cir. Aug. 26, 2022) (citing 29 U.S.C. §§ 201–19).

According to the FLSA, an 'employee' is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employer" is defined by the statute as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." *Id.* § 203(d). "When determining whether an individual is an employee under the FLSA or an independent contractor exempt from its coverage, 'our inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Merrill*, 2022 WL 369669, at *5 (quoting *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994)). Instead, whether a party is an employer turns on the economic realities of the relationship with the putative employee. *Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). Therefore, the Tenth Circuit employs the "economic realities" test:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

---

dismisses these claims on sufficiency grounds, it need not reach this argument, *see infra*. The Court notes, as well, that this timeliness argument is itself not timely. The statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c)(1), and it supports dismissal under Rule 12(b)(6) only when the dates in a complaint make clear that the claim is time-barred. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298–99 (10th Cir. 2018). Plaintiff's Complaint alleges no dates, so nothing in it evidences a possible time bar. *See generally* Compl. Defendants may later raise this defense.

*Id.* (citing *Henderson*, 41 F.3d at 570).[4]

Here, the Complaint refers only to Defendant Pecos as Plaintiff's "direct employer," Compl. at 1, and Defendants tacitly concede that contention, Mot. at 7.[5] Plaintiff's Complaint describes Defendant Domino's as the "corporate entity" responsible for "oversight, HR [and] ratification," Defendant Johnson as VP of Human Resources, and Santiago as "supervising manager." Compl. at 1. It calls Defendant Bailey "counsel for BAM" in one place and BAM's CEO in another. *Id.* at 1, 3. None of these definitions, nor any of Plaintiff's further factual allegations, support the proposition that Domino's, Johnson, Santiago, or Bailey held an employer-employee relationship with Plaintiff. *See generally* Compl. However, Plaintiff's factual allegations as to Defendants Thomas and Celestine plausibly support an employer-employee relationship. Plaintiff's allegations that "[Defendant] Thomas and [Defendant] Celestine diverted tips, reduced hours, and required work without compensation" serves as sufficient indicia, at least at this stage of the proceedings, that the two Defendants exercised employer-control over Plaintiff as per the economic realities test. *Id.* at 4; *see Baker*, 137 F.3d at 1440 (factors include "the degree

[4] As *Baker* itself affirms, this test is not absolute—a variety of non-exhaustive factors counsel whether a party is an employer. *See Baker*, 137 F.3d at 1440. This Court, in fact, has previously advanced other factors, including a test from the Seventh Circuit in *Moldenhauer v. Tazewell–Pekin Consolidated Communications Center,* 536 F.3d 640, 644 (7th Cir. 2008). *Saavedra v. Lowe's Home Centers, Inc.*, 748 F. Supp. 2d 1273, 1287 (D.N.M. 2010) ("In assessing the amount of control an employer exercised over an employee, other courts have addressed various factors such as whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records.") (quoting *Moldenhauer*, 536 F.3d at 644). Defendants legitimately put forth the multifactor test from *Moldenhauer*. Mot. at 6. The Court finds that these factors are probative, as well, and consistent with the *Baker* test.

[5] Defendants only resist classifying Defendants Domino's, Johnson, Thomas, Celestine, Bailey, and Santiago as employers under the FLSA. *See* Mot. at 7.

of control exerted by the alleged employer over the worker" and "the worker's opportunity for profit or loss.").

Since employer status is a threshold inquiry for claims brought under the FLSA, Plaintiff's failure to sufficiently allege that Defendants Domino's, Johnson, Bailey, and Santiago were employers acts as a total bar for FLSA claims against the respective Defendants. However, even barring this general deficiency as to many of the Defendants, Plaintiff's FLSA claims possess further insufficiencies.

**B. Plaintiff fails to sufficiently state an FLSA claim for unpaid wages.**

Plaintiff fails to plead a claim under the FLSA for unpaid wages. The FLSA requires, among its other provisions, and omitting codified exceptions, employers to pay a minimum wage and overtime. *See* 29 U.S.C. §§ 206–07. Further, the FLSA confers a private right of action to remedy violations. *See* 29 U.S.C. § 216(b). Importantly, post-*Twombly* and *Iqbal*, to state a claim under the FLSA, "conclusory allegations that merely recite the statutory language" are not adequate. *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014) (cited approvingly by the Tenth Circuit in *ElHelbawy v. Pritzker*, 663 F. App'x 658, 663 (10th Cir. 2016) (unpublished)). Although the Tenth Circuit has not adopted a bright-line standard on the necessary elements of an FLSA claim for unpaid wages, peer district courts in this Circuit have explained that "[t]he requirements to state a claim of an FLSA violation are quite straightforward, requiring plaintiff to show a failure to pay overtime compensation and/or minimum wages to covered employees—no more." *Rayfield v. Sandbox Logistics, LLC*, 217 F. Supp. 3d 1299, 1300 (D. Colo. 2016) (internal quotations omitted). The Ninth Circuit has held "that in order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked

during that workweek." *Landers*, 771 F.3d at 644–45. The District of Colorado, similarly, in *Rayfield*, found a claim for overtime payments adequate where the plaintiff pleaded "that he was a covered employee, that he worked in excess of 40 hours per week, and that he was not paid overtime." 217 F. Supp. 3d at 1300.

Here, Plaintiff does not specify in her Complaint whether her claim under the FLSA for unpaid wages is for failure to pay overtime compensation, minimum wages, or both, and fails to allege sufficient facts for either. Plaintiff's Complaint alleges that "Domino's Corporate admitted Plaintiff was owed for three unpaid deliveries but delayed payment, constituting late payment under federal and New Mexico law." Compl. at 3. First, the latter portion of this allegation is a patent legal conclusion that the Court disregards. *Kan. Penn Gaming*, 656 F.3d at 1214 ("[A] court should disregard all conclusory statements of law . . . ."). Second, this allegation, along with the remainder of the Complaint, does not allege that the delayed payment for these three unpaid deliveries was overtime, or that the delay left Plaintiff below the minimum wage for any workweek. *See generally* Compl. Moreover, the Complaint fails to allege dates or timelines of the scheduled date for payment and a date by which Plaintiff was yet to be paid to demonstrate that any Defendant violated the FLSA. *Id.* Plaintiff's Complaint is left with a threadbare assertion that "Domino's Corporate admitted Plaintiff was owed for three unpaid deliveries but delayed payment," that lacks the sufficiency described in *Landers* or *Rayfield*. *Id.* at 3.

Likewise, Plaintiff's allegation that Defendants Thomas and Celestine "reduced hours, and required work without compensation, violating FLSA §§ 203(m), 206, 215(a)(3)" (sic) also falls short of the pleading standard. *Id.* at 4. It does not identify what work went unpaid or when, or whether any Defendant paid Plaintiff for any workweek below the minimum wage. To be sure, Plaintiff need not "itemize or provide detailed dates and times of [her] work at the pleading stage,"

but more than a vague, conclusory allegation is necessary. *Rayfield*, 217 F. Supp. 3d at 1300. In *Rayfield*, for example, the district court found the plaintiff's complaint sufficient where he claimed he was employed for the defendant "from March 2016 to June 2016, working 12-hour shifts seven days a week for two weeks, with seven days off in between, without ever receiving overtime pay." *Id.* Thus, the plaintiff in *Rayfield* described a broad timeline and specified the type of pay (i.e., overtime pay) of which the defendant deprived him. *Id.* Plaintiff's claim, conversely, does not provide a timeline or specify the type of pay for which she alleges any Defendant deprived her. Moreover, nothing in the FLSA guarantees a set number of working hours an employee must be allocated by an employer, such that the statute cannot vindicate Plaintiff's allegation that Defendants reduced her hours. *See* 29 U.S.C. §§ 201–19. Plaintiff does not otherwise explain how Defendants reducing her hours violated any statutory right. *See generally* Compl.

**C. Plaintiff fails to sufficiently state an FLSA claim for tip diversion.**

Plaintiff, similarly, fails to sufficiently plead an FLSA claim for tip diversion. The FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

Here, Plaintiff fails to state a cognizable claim under the FLSA for tip diversion because her allegation is far too general. The Complaint states only that Defendants Thomas and Celestine "diverted tips." Compl. at 4. It does not allege that Plaintiff's tips were kept improperly by any Defendant, nor does it allege how, when, or in what amount her tips were "diverted." *See id.* Additionally, as Defendants correctly note, "Plaintiff does not allege whether the allegedly 'diverted' tips were earned by her or anyone else and were purportedly paid to someone else, or whether Thomas and Celestine assigned tip-earning work to someone and thereby 'diverted'

Plaintiff's or someone else's opportunity to earn tips." Mot. at 7. Indeed, Plaintiff's generalized tip diversion allegation is insufficient. Furthermore, the alleged action of "diversion" can encompass a variety of deeds, not all unlawful under the terms of § 203(m)(2)(B), which Plaintiff brings her claim under. Compl. at 4. Plaintiff's Response suggests that managers took tip-producing delivery orders for themselves while drivers were available.[6] Resp. at 7. This is not the allegation that Plaintiff advances in her Complaint, and the Court cannot look to Plaintiff's Response to Defendants' Motion to correct deficiencies in her Complaint. *See Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016) ("At [the motion to dismiss] stage of the proceedings, our review is limited to the Complaint and any documents it incorporates.") (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)).

**D. Plaintiff fails to sufficiently state an FLSA claim for retaliation.**

Although Defendants do not separately address the retaliation theory as a basis for FLSA liability, the Motion asks that every claim be dismissed,[7] Mot. at 1, 16, and thus the Court addresses this claim's sufficiency. Plaintiff fails to sufficiently allege FLSA retaliation because her Complaint does not allege that she complained about her FLSA rights before her termination, or that whoever decided to terminate her knew of any complaint. *See generally* Compl.

The FLSA makes it unlawful to discharge an employee because she "has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3).[8] Both informal and oral complaints to an employer may suffice under §

[6] Nevertheless, the Court does not express a view on whether such conduct would rise to a cognizable claim under § 203(m)(2)(B).

[7] Defendants also argue that because "the Complaint fails to state an actionable claim under the FLSA . . . against any of the Defendants, such claims should be dismissed." Mot. at 8.

[8] § 215(a)(3) also makes unlawful discrimination against an employee for serving on, or imminently serving on, an industry committee.

215(a)(3). *See Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011). Importantly, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14. According to the Tenth Circuit, "FLSA retaliation claims are analyzed under the familiar three-pronged *McDonnell Douglas* burden-shifting framework." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997). Thus, to state an FLSA retaliation claim, a plaintiff must allege three things: "(1) she engaged in protected activity under FLSA, (2) she suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action." *Id.*; *see also Betts v. Work Zone Traffic Control, Inc.*, 802 F. App'x 365, 368 (10th Cir. 2020) (unpublished).

Here, Plaintiff fails to allege any facts to support an allegation under § 215(a)(3). Plaintiff does not allege any facts about having previously initiated an FLSA complaint or proceeding, or testifying in such a proceeding, or suggest that any Defendant discriminated against her in response. *See generally* Compl. Indeed, Plaintiff does not allege that she complained before her termination or that whoever decided to terminate her knew of the complaint, thus failing to plausibly show FLSA retaliation. *See generally id.*; *Pacheco*, 365 F.3d at 1206. Without these fundamental allegations, Plaintiff's claim for FLSA retaliation fails.

## II. <u>Plaintiff fails to sufficiently state a Title VII claim</u>.

Plaintiff fails to sufficiently plead a Title VII claim. Plaintiff attempts to allege a claim under Title VII for "hostile work environment, racial discrimination, [and] retaliation (EEOC filing

pending)". Compl. at 5. Title VII prohibits, among other proscribed practices, employment discrimination "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Court agrees with Defendants that Plaintiff fails to sufficiently allege any Title VII claims because the Complaint states that her EEOC charge is still pending, and exhaustion is necessary to bring a Title VII claim. Mot. at 8–9. Independently, the Complaint alleges no facts regarding whether she falls within a protected class, neglecting to create the necessary nexus between any harassment or adverse action to her protected characteristic. *Id.* Nor does Plaintiff allege she engaged in any activity protected by Title VII. *Id.* at 9–10. Moreover, Title VII does not impose liability on individual supervisors or workers in their personal capacity, only against the employer itself. *See Haynes v. Williams,* 88 F.3d 898, 899 (10th Cir. 1996) ("The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act.") (quoting *Sauers v. Salt Lake Cnty.,* 1 F.3d 1122, 1125 (10th Cir. 1993)). Therefore, the Court dismisses any Title VII claims against Defendants Johnson, Thomas, Celestine, Bailey, and Santiago with prejudice and against Defendants Domino's and Pecos without prejudice.

**A. Plaintiff failed to exhaust her Title VII claim.**

As a threshold matter for any of Plaintiff's Title VII claims, Plaintiff failed to exhaust her remedy before the EEOC. A Title VII plaintiff must file an EEOC charge within 300 days of the challenged action, receive a right-to-sue notice, and sue within 90 days of receiving it. *See* 42 U.S.C. § 2000e-5(b), (c), (e), (f)(1); *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007). "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (quoting *Simms v.*

*Oklahoma ex rel. Dep't of Mental Health & Substance Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999) (abrogated in part on other grounds). "This individual filing requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims." *Id.* at 1195. "Furthermore, each discrete incident of [discriminatory or retaliatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (internal citations omitted).

Notably, exhaustion is not jurisdictional. The Tenth Circuit overruled its precedent treating the filing of an EEOC charge as a jurisdictional prerequisite—it held that "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Id.* at 1185. The Supreme Court agreed the year following *Lincoln*: "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 551 (2019). Because failure to exhaust is an affirmative defense, it supports dismissal under Rule 12(b)(6) only when it appears on the face of the complaint. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("To be sure, on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense. But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements.").

Here, Plaintiff's Complaint fairly allows Defendants to put forth a failure to exhaust argument. Indeed, Plaintiff's Complaint does more than merely omit the facts of exhaustion—rather, it affirmatively states that Plaintiff's "EEOC filing is pending," Compl. at 3, and Plaintiff

brings the Title VII claim with the parenthetical "EEOC filing pending," *id.* at 5. Thus, the defense appears on the face of the pleading and is thus properly considered. Accordingly, the Court finds Defendants' failure to exhaust argument persuasive. *See* Mot. at 8–9.

The Court notes that the Complaint does not say when Plaintiff filed her charge or what the charge alleged. *See generally* Compl. To the extent that Plaintiff relies on discrete retaliatory acts by Defendants, which occurred after filing her charge, those acts must be exhausted through a new or amended charge. *Lincoln*, 900 F.3d at 1181. The Court does not currently decide whether a right-to-sue notice issued after Plaintiff filed suit could cure the defect because the Complaint does not allege one.

Additionally, regardless of Plaintiff's general exhaustion failure, Plaintiff's Complaint fails to make sufficient allegations to support her Title VII claims.

### B. Plaintiff fails to sufficiently allege Title VII discrimination or a hostile work environment.

Plaintiff fails to plead a claim under Title VII for discrimination or a hostile work environment. Title VII discrimination and hostile work environment claims share similar elements. First, while there are no rigid requirements for a Title VII discrimination case in the Tenth Circuit, and courts have some flexibility in determining if a plausible claim has been made, generally a "Title VII plaintiff bringing a claim of employment discrimination must plausibly allege these elements: (1) 'she is a member of a protected class,' (2) 'she suffered an adverse employment action,' and (3) 'the challenged action occurred under circumstances giving rise to an inference of discrimination.'" *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (quoting *Bennett v. Windstream Commc'ns., Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015)). Second, "to plausibly state a hostile work environment claim under these statutes, plaintiff

must allege that: (1) he was discriminated against because of his membership in a protected class; and (2) that 'the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of [his] employment and created an abusive working environment.'" *Weathersby v. Latshaw Drilling Co., LLC*, No. 24-CV-0368-CVE-CDL, 2024 WL 4896604, at *7 (N.D. Okla. Nov. 26, 2024) (quoting *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1227 (10th Cir. 2022)).

Here, Plaintiff does not make a plausible showing for either Title VII discrimination or a hostile work environment. Plaintiff's Complaint lists "racial discrimination" as a basis for her Title VII claim, Compl. at 5, but it never states Plaintiff's race or describes any conduct by Defendants connected to her race. Nor does the Complaint identify who discriminated against her or how. *See generally id.* The Complaint describes gossip, mocking, exclusion, accusations at a purported "Secret Santa" event, and retaliatory scheduling, but does not allege that the accusations or retaliatory scheduling were predicated on a protected characteristic. *Id.* at 4. Indeed, none of the aforementioned conduct is linked by any of Plaintiff's allegations to race or any other protected characteristic. Thus, Plaintiff's allegations, however unpleasant, are insufficient as pleaded to state a claim for either Title VII discrimination or hostile work environment.

**C. Plaintiff fails to sufficiently allege Title VII retaliation.**

While Title VII protects employees from retaliation by employers, 42 U.S.C. § 2000e-3(a), Plaintiff nonetheless fails to plead a cognizable claim for Title VII retaliation. "To survive a motion to dismiss, a plaintiff asserting a Title VII retaliation claim must "plausibly allege '(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *McNellis*, 116 F.4th at 1142 (quoting *Reznik* v. *inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)).

Here, Plaintiff's Complaint does not state a plausible claim for Title VII retaliation. Plaintiff does not allege that she opposed anything she reasonably believes was discriminatory, nor does she link any adverse action to her EEOC filing. *See generally* Compl. Opposition to alleged discrimination is the first prong of the prima facie, and a necessary hurdle for Plaintiff's Title VII retaliation claim. Nor does the Complaint, then, allege any adverse action taken because of any alleged opposition to discrimination. Filing an EEOC charge can qualify as protected opposition, but the Complaint only refers generally to "pre-filing and post-filing misconduct." Compl. at 3. It does not say when Plaintiff filed her charge, what adverse action from Defendants ensued, or even that any of the Defendants were aware of the EEOC charge. *See generally id.* Accordingly, Plaintiff fails to sufficiently allege Title VII retaliation.

**D. Title VII does not permit claims against the individual Defendants.**

As Title VII only recognizes claims against "employers," and not individuals, Plaintiff's Title VII claims as to Defendants Johnson, Thomas, Celestine, Bailey, and Santiago are barred. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Although the statutory definition facially seems to include agents, the Tenth Circuit has clearly established that "individual supervisors cannot be held personally liable and that personal-capacity suits against fellow employees are inappropriate." *Fuller v. Dep't of Children & Families*, 805 F. App'x. 601, 605 (10th Cir. 2020) (unpublished) (citing *Haynes*, 88 F.3d at 898–99; *Sauers*, 1 F.3d at 1125).

Here, Plaintiff names several impermissible individual Defendants as liable under Title VII in their personal capacity. Plaintiff's individual Defendants are two general managers, a supervising manager, a human resources vice president, and a person described alternatively as

BAM's counsel or CEO. Compl. at 1, 3. Under *Haynes*, none of Plaintiff's individual Defendants can be liable under Title VII. Accordingly, Plaintiff's Title VII claims against Defendants Johnson, Thomas, Celestine, Bailey, and Santiago are dismissed with prejudice because they are categorically impermissible. Nevertheless, Plaintiff's Title VII claims against Defendants Domino's and Pecos are recognized by Tenth Circuit law and may suffice if properly pleaded with sufficient allegations.

**III. <u>Plaintiff fails to sufficiently state an IIED claim</u>.**

Plaintiff fails to plead a claim for IIED against Defendants. "When exercising jurisdiction over pendent state claims, we must apply the substantive law of the forum state and reach the same decision we believe that state's highest court would, just as we would if our jurisdiction rested on diversity of citizenship." *Lytle v. City of Haysville*, 138 F.3d 857, 868 (10th Cir. 1998). Therefore, the Court applies New Mexico tort law to resolve whether Plaintiff sufficiently stated a claim for IIED. *See Foxfield Villa Assocs., LLC v. Regnier*, 918 F. Supp. 2d 1192, 1200 (D. Kan. 2013); *see also Okla. Land Holdings, LLC v. BMR II, LLC*, No. CIV-17-1036-D, 2020 WL 4284806, at *3 (W.D. Okla. July 27, 2020) (unpublished).

To establish an IIED claim under New Mexico state law, Plaintiff must show the following elements: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 342 (N.M. 2001) (quoting *Hakkila v. Hakkila,* 812 P.2d 1320, 1330 (N.M. Ct. App. 1991)). The New Mexico Supreme Court defined "extreme and outrageous conduct" as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing Restatement (Second) of Torts § 46 cmt. d); *see also Stieber v. Journal Publ'g Co.,* 901 P.2d 201, 205 (N.M. Ct. App. 1995). As an initial matter, the New Mexico Supreme Court instructs the trial court to "determine as a matter of law whether the conduct at issue 'reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress.'" *Trujillo*, 41 P.3d at 343 (quoting *Padwa v. Hadley,* 981 P.2d 1234, 1237 (N.M. Ct. App. 1999)).

Here, Plaintiff's allegations fall short of the pleading standard for an IIED claim. Although Defendants' description of Plaintiff's claim omits several critical allegations, Mot. at 11, Plaintiff's allegations are mere labels of conduct without facts to carry the IIED claim. Plaintiff alleges that Defendant Johnson "mocked trauma" and "forced repeated recounting of trauma" (sic). Compl. at 4. Plaintiff further alleges that Defendants "had actual knowledge" of her purported "prior trauma." *Id.* Additionally, Plaintiff ambiguously alleges "harassment" through her complaint from Defendants, which supposedly intensified her prior trauma. *Id.* These allegations do not specify what Defendant Johnson said or did, nor when or how often. The Complaint elides necessary details about what her "harassment" constituted or how Defendants exacerbated her purported trauma. Plaintiff's most specific allegations comprise her "prior trauma," which is not itself sufficient to make out a claim for IIED against Defendants. Accordingly, Plaintiff's allegations do not survive the threshold inquiry set forth by the New Mexico Supreme Court. Plaintiff's IIED claim is dismissed without prejudice.[9]

---

[9] Defendants argue, albeit in passing, that "New Mexico IIED claims are subject to a three-year statute of limitations." Mot. at 10–11. The argument resembles Defendants' statute of limitations contention made against Plaintiff's FLSA claim. *See* n. 3. Defendants' statute of limitations argument is untimely for the same reasons as described in n.3 and may be later raised.

## IV. <u>Plaintiff fails to sufficiently state a retaliatory discharge claim</u>.

Plaintiff fails to plead a retaliatory discharge claim. Both Plaintiff and Defendants treat Plaintiff's fourth claim for relief, entitled "Wrongful Termination/Retaliation," as a New Mexico common-law claim for retaliatory discharge. *See* Mot. at 12–13; *see also* Resp. at 12–13. Therefore, the Court treats Plaintiff's fourth claim for relief the same.

"To state a claim for common law retaliation in New Mexico, 'an employee must (1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that he or she acted in furtherance of the clearly mandated public policy; and (3) show that he or she was terminated as a result of those acts.'" *Spinelli v. Coherus Biosciences, Inc.*, 167 F.4th 1274, 1284 (10th Cir. 2026) (quoting *Sherrill v. Farmers Ins. Exch.*, 374 P.3d 723, 727 (N.M. Ct. App. 2016)); *see also Shovelin v. Cent. N.M. Elec. Co-op., Inc.*, 850 P.2d 996, 1006 (N.M. 1993) ("The employee must also show a causal connection between his actions and the retaliatory discharge by the employer."). New Mexico courts have stated that the tort of common law retaliation covers discharge for performing an act that public policy authorizes or encourages, or for refusing to do something public policy condemns. *Chavez v. Manville Prods. Corp.*, 777 P.2d 371, 375 (N.M. 1989); *Quiroz v. ConocoPhillips Co.*, 310 F. Supp. 3d 1271, 1317 (D.N.M. 2018).

Here, Plaintiff fails to plead the necessary elements of a common law retaliation claim under New Mexico state law. The Complaint alleges that Plaintiff was "terminated for alleged 'falsification of evidence' regarding two selectively redacted text messages." Compl. at 3. It also alleges that Defendant Johnson "admitted on a recorded . . . call that no fabrication occurred." *Id.* These allegations, taken as true, plausibly demonstrate that the stated reason for termination was false. However, critically, the Complaint does not allege what Plaintiff reported, to whom, or when, and whether any such action occurred prior to her termination. Moreover, the Complaint

does not identify any public policy her conduct furthered—or alternatively any conduct she refused to participate in, that public policy condemns. *See* Chavez, 777 P.2d at 375. An erroneous or falsified stated justification for termination does not, by itself, show that the genuine reason was protected activity. Plaintiff's later request to add the "particular public policy and protected conduct," Resp. at 13, confirms that the Complaint lacks these requisite elements. As such, Plaintiff's retaliatory discharge claim is dismissed without prejudice.

## V. **Plaintiff fails to sufficiently state a defamation claim.**

Plaintiff fails to sufficiently plead a defamation claim. A claim for defamation is, like IIED, a state law cause of action and governed by New Mexico state law. "In New Mexico, defamation is defined as 'a wrongful and unprivileged injury to a person's reputation.'" *Hubbard v. J Message Group Corp.*, 325 F. Supp. 3d 1198, 1220 (D.N.M. 2018) (quoting UJI 13-1001 NMRA (brackets omitted)). "The elements of defamation include: a defamatory communication, published by the defendant, to a third person, of an asserted fact, which is false, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff's reputation." *Id.*; *see also* UJI 13–1002 NMRA (listing all nine elements of defamation).

Here, Plaintiff's Complaint contains bare and conclusory support for a defamation claim. The Complaint alleges "[p]ublic humiliation include[ing] accusations during Secret Santa." Compl. at 4. It does not include what was said, who said it, to whom, or that the accusation was false. And, "[p]ublic humiliation" describes a conclusory harm to Plaintiff—it is not a separate cause of action as Plaintiff attempts to make out in her Complaint. *See id.* at 5. And, to the extent that Plaintiff seeks to rely on the "falsification of evidence" accusations underlying her termination to carry her defamation claim, *id.* at 3, the Complaint does not allege that anyone communicated

the accusations to a third party. Accordingly, Plaintiff's defamation claim is dismissed without prejudice.[10]

## VI. **Plaintiff fails to sufficiently state a New Mexico state wage claim.**

Plaintiff fails to sufficiently plead a New Mexico state wage claim. First, the only provision that Plaintiff cites is a definitional section that imposes no duty on Defendants and, second, even construed liberally, the Complaint lacks sufficient allegations.

The only provision Plaintiff's Complaint cites, N.M. Stat. Ann. § 50-4-1 (2019), supplies definitions for the terms "employer" and "wages" used in §§ 50-4-1 through 50-4-12 (2019). Plaintiff's cited statute, thus, does not provide a cause of action for state wage violations, or otherwise. However, a pro se complaint is not defeated by a miscitation alone. The Court reads Plaintiff's Complaint to state a valid claim, if it reasonably can, "despite the plaintiff's failure to cite proper legal authority." *Hall*, 935 F.2d at 1110. Therefore, the Court will view Plaintiff's New Mexico state wage claim as arising broadly under the New Mexico Minimum Wage Act ("NMMWA").

The NMMWA (1) "establish[es] minimum wage and overtime compensation standards for all workers at levels consistent with their health, efficiency and general well-being" and (2) "safeguard[s] existing minimum wage and overtime compensation standards which are adequate to maintain the health, efficiency and general well-being of workers against the unfair competition of wage and hours standards which do not provide adequate standards of living." N.M. Stat. Ann. § 50-4-19 (1955). The NMMWA functions, in large part, as a state analogue for the FLSA. *See Padilla v. Am. Fed'n of State, Cnty., & Mun. Emps.*, No. CV 11-1028 JCH/KBM, 2013 WL

[10] Defendants refer vaguely to the statute of limitations for defamation claims under New Mexico law. Mot. at 12. To the extent that Defendants pose a statute of limitations argument for dismissal, the argument is untimely for the same reasons as described in n.3 and may be later raised.

12085976, at *9 (D.N.M. Mar. 28, 2013) (unpublished) ("The relevant provisions of the NMMWA are similar to those of the FLSA."); *see also West v. Bam! Pizza Mgmt., Inc.*, No. 1:22-cv-00209-SMD-JMR, 2025 WL 2879940, at *4 (D.N.M. Oct. 9, 2025) (unpublished) ("The FLSA and NMMWA contain nearly identical minimum wage provisions."). Further, this Court has previously found that "[t]he NMMWA defines an employee using the 'economic reality' test." *Golden v. Quality Life Servs.*, No. CV 22-579 GJF/GBW, 2023 WL 3182645, at *11 (D.N.M. Apr. 30, 2023) (unpublished); *see also Casias v. Distrib. Mgmt. Corp., Inc.*, Civ. No. 11-00874, 2014 WL 12710236, at *10 (D.N.M. Mar. 31, 2014) (unpublished); *accord Garcia v. Am. Furniture Co.*, 689 P.2d 934, 938 (N.M. Ct. App. 1984) (listing factors including "pay, contract, control[,] and voluntary action" that comprise the "total employment situation which disclose[s] the economic reality").

The NMMWA states that "[e]xcept as provided in Subsection C of this section, an employer shall pay to an employee a minimum wage rate." N.M. Stat. Ann. § 50-4-22(A) (2021). Additionally, the NMMWA mandates that "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours." N.M. Stat. Ann. § 50-4-22(D) (2021). To this end, the NMMWA then authorizes actions "by any one or more employees for and on behalf of the employee or employees and for other employees similarly situated" to recover "unpaid or under paid minimum wages plus interest[.]" N.M. Stat. Ann. § 50-4-26 (2013). This Court has previously found that the NMMWA "imposes a mandate which . . . authorizes claims for under-reimbursed business expenses that result in sub-minimum wages."

*West v. Bam! Pizza Mgmt., Inc.*, 793 F. Supp. 3d 1338, 1350 (D.N.M. 2025).[11] As is the case under the FLSA, "[t]o succeed on a NMMWA overtime compensation claim, a plaintiff must establish: "(a) they worked more than forty hours a week, (b) that management knew or should have known that they did so, and (c) that they were not compensated for the overtime." *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 688 (D.N.M. 2019) (quoting *Self v. United Parcel Serv., Inc.*, 970 P.2d 582, 589 (N.M. 1998)). Finally, the NMMWA possesses a provision for tip retention regulation: an employee who regularly receives more than $30 per month in tips may be paid a reduced cash minimum wage of $3 an hour—however, the employee's cash wages plus tips must equal at least the applicable minimum wage, and all tips received must be retained by the employee, but tip pooling among wait staff is permissible. N.M. Stat. Ann. § 50-4-22(C) (2021).

Here, Plaintiff fails to sufficiently plead a claim under the NMMWA much in the same way Plaintiff fails to sufficiently plead an FLSA claim.[12] *See* Section I. The Court incorporates its reasoning set forth above, dismissing Plaintiff's FLSA claim. In summary, Plaintiff's allegations, *see* Compl. at 4, do not specify whether her claim under the NMMWA is for failure to pay overtime compensation, minimum wages, or impermissible tip retention, and additionally fail to allege sufficient facts for any. Furthermore, the NMMWA does not guarantee Plaintiff a minimum number of hours, thus Plaintiff's allegation that Defendants Thomas and Celestine "reduced hours" fails. *Id.* Accordingly, Plaintiff's NMMWA claim is dismissed without prejudice.

---

[11] Relevant to the instant case, this Court previously held that "(1) the NMMWA provides a cause of action for kickbacks that drive an employee's pay below the legal minimum and (2) under-reimbursed delivery expenses provide a kickback to an employer." *West*, 793 F. Supp. 3d at 1354.

[12] Refer to Section I dismissing Plaintiff's FLSA claim for a more fulsome discussion of why Plaintiff's allegation that Defendants Thomas and Celestine "diverted tips, reduced hours, and required work without compensation" does not suffice for a claim under the FLSA, and likewise—by the same logic—under the NMMWA.

## VII. **<u>Plaintiff fails to sufficiently state a negligent supervision claim</u>.**

Plaintiff fails to sufficiently plead a negligent supervision claim.[13] To sufficiently plead a claim for negligent supervision, Plaintiff must show the following: "(1) the employer knew or should have known the employee was unfit; (2) that the employer failed to exercise reasonable care in hiring, training, supervising or retaining the employee; and (3) that the employer's negligence caused the plaintiff's injury." *McCormack v. Caddell*, No. 25-677 GBW/GJF, 2025 WL 3268704, at *2 (D.N.M. Nov. 24, 2025) (unpublished) (citation modified) (citing UJI 13-1647 NMRA; *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 73 (N.M. 2004)); *see also Depaula v. Easter Seal, El Mirador*, No. 1:14-CV-00252-MCA-SCY, 2016 WL 6681182, at *9 (D.N.M. Mar. 31, 2016) (unpublished).

Here, Plaintiff's Complaint asserts a negligent supervision claim against all Defendants but fails to allege facts necessary to meet the claim's requisite elements. Indeed, "Plaintiff fails to allege facts to identify which employee or employees was or were negligently supervised, or that any of the Defendants were their employer, thus failing to establish the first required element." Mot. at 14. For instance, Plaintiff names employees who allegedly harassed her, Compl. at 4, but she does not allege who supervised these employees, what each Defendant knew, or how any relevant supervision was deficient. While Plaintiff's allegation that she sent reports of "ongoing abuse" may bear on notice, the allegation only could state one element of negligent supervision, leaving absent the remaining elements. *Id.* at 3. And Plaintiff's "ratification" allegation, *id.* at 4, is conclusory and fails to identify what conduct any Defendant ratified or how. Therefore, Plaintiff's negligent supervision claim is dismissed without prejudice.

---

[13] Plaintiff frames her claim as "Negligent Supervision/Ratification of Misconduct." Compl. at 5. However, ratification is not a cause of action but rather a manner by which one party may be held liable for another's actions. *See* Restatement (Third) of Agency § 4.01 (2006).

**VIII. <u>Witness tampering is not a civil cause of action, and thus Plaintiff's claim fails</u>.**

Witness tampering statutes under both federal and New Mexico state law do not offer a civil cause of action. Therefore, Plaintiff fails to state a claim for witness tampering.

Witness tampering constitutes a serious violation—one which Congress sought to vindicate through criminal penalties. The federal statute encompassing witness tampering, 18 U.S.C. § 1512, provides for variable criminal penalties, namely terms of imprisonment, for the severity of witness tampering. Importantly, § 1512 is a criminal statute that confers no private civil cause of action in its text. Because § 1512 provides no express right of civil action in its text, the Court must look to the legislative intent. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.") (internal citations omitted). Without legislative intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* The Tenth Circuit has previously held that criminal statutes contemplate only criminal proceedings when no evidence exists to illustrate Congressional intent to the contrary. *See, e.g.*, *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (finding that violations of 18 U.S.C. §§ 241, 371, 1001, 1341, and 1503, and 26 U.S.C. § 7214(a)(1), (2), (7), and (8) only offer criminal actions and are not enforceable through civil action); *United States v. Claflin,* 97 U.S. 546, 547 (1878) ("That act contemplated a criminal proceeding, and not a civil action . . . . It is obvious, therefore, that its provisions cannot be enforced by any civil action . . . ."); *Schmeling v. NORDAM,* 97 F.3d 1336, 1344 (10th Cir. 1996) ("[W]e find no evidence that Congress intended to create the right of action asserted by Schmeling, and we conclude that such a right does not exist."). No

legislative intent is discernible in § 1512 to convert it into a private, civil right of action. Further, Plaintiff identifies no basis to provide a civil right of action, *see generally* Resp., and the Court will not invent a reason.

Similarly, New Mexico state law criminalizes witness tampering through statute in N.M. Stat. Ann. § 30-24-3 (1997). Much the same as its federal counterpart, § 30-24-3 enumerates criminal penalties for witness tampering and evidences no intent for a civil right of action. Again, in absence of a clear legislative intent, and where Plaintiff does not highlight one, the Court declines to extend a civil right of action under New Mexico state law for witness tampering.

Because any amendment Plaintiff could make necessarily would fail to state a civil claim for witness tampering, the Court dismisses this claim with prejudice. Plaintiff, however, can replead the underlying allegations to support a recognized civil claim.

## IX. The Court reminds Plaintiff that she must plead her claims in accordance with federal law.

The Court concludes this dismissal by counseling Plaintiff to familiarize herself and abide by the requirements of Federal Rules of Civil Procedure, specifically Rules 8(a) and 10(b). Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count . . . ." *Id.* Plaintiff's allegations need not be voluminous, verbose, or filled with legal jargon. The Complaint need only set out facts necessary for Defendants to understand the specific claims, with supporting allegations, against each of them.

Plaintiff's Complaint closely resembles a "shotgun pleading."[14] *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) ("A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both."). Courts have identified four types of shotgun pleadings:

> The first is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." The second is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The third is a complaint that does not separate "each cause of action or claim for relief" into a different count. And the final type of shotgun pleading is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Id.* at 1324–25 (internal citations omitted). Each category of shotgun pleading presents distinct pitfalls that doom a complaint—Plaintiff should review each kind and avoid falling into any. Plaintiff should strive to make concise claims with only material facts. Moreover, Plaintiff should avoid using symbols like arrows in the complaint and disjointed, phrasal language.

**CONCLUSION**

Plaintiff fails to state a claim upon which relief may be granted. As the dismissal of some of Plaintiff's claims may be cured through adequate amendment and others rest on legal bars that amendment cannot resolve, the **Court dismisses some of Plaintiff's claims without prejudice and others with prejudice**. The Court dismisses Plaintiff's FLSA claims, Title VII claims against Defendants Domino's and Pecos, IIED claim, retaliatory discharge claim, defamation claim,

---

[14] This Court recognizes shotgun pleadings as "pernicious." *Vasquez v. Tafoya-Lucero*, No. 20-cv-612 RB-KRS, 2021 WL 192360, at *1 (D.N.M. May 13, 2021) (unpublished). *See also Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989); *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1243 (D. Colo. 2014) (unpublished); *D.J. Young Pub. Co., LLC ex rel. Young v. Unified Gov't of Wyandotte*, No. 12–CV–2011–KHV, 2012 WL 4211669, at *3 (D. Kan. Sept. 18, 2012) (unpublished).

NMMWA claim, and negligent supervision claim without prejudice. The Court dismisses Plaintiff's Title VII claims against Defendants Johnson, Thomas, Celestine, Bailey, and Santiago and Plaintiff's witness tampering claim with prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 13) is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order. Plaintiff is given **21 days to amend.** If Plaintiff fails to timely amend her Complaint, the Court may enter judgment.

___/S/________________________
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE